Dinke Lowe v. The State.

No. 4810.   Decided March 6, 1918.

1.—Murder—Special Judge—Statutes Construed—De Facto—De Jure Officer.

Where it appeared from the record on appeal that on a date following the election of the special judge, in the absence of the regular judge, the latter vacated his office by accepting an appointment in the Federal government as an officer in the military service, there was no reversible error for the special judge to proceed with the business of the court, under article 1678, Vernon's Texas Civil Statutes, as authorizeed by section 7 under article 5 of the Constitution. Besides, such judge was a de facto officer, if not a judge de jure. Following Greer v. State, 65 S. W. Rep., 1075, and other cases.

2.—Same—Evidence—Declarations of Defendant—Motive.

Upon trial of murder there was no error in admitting testimony as to the declarations of the defendant some time before the homicide with reference to denying the accusation of stealing chickens, etc., over which the difficulty arose. Following Waters v. State, 54 Texas Crim. Rep., 322.

3.—Same—Evidence—Declarations of Third Party—Res Gestae.

Upon trial of murder there was no error in admitting in evidence the declarations of a witness, who was coming from the scene of the difficulty, to the effect that they were killing his boy, this occurring at the time of the difficulty and within a short distance of the place of its occurrence, and was therefore a part of the res gestae. Following Fleming v. State, 54 Texas Crim. Rep., 339, and other cases.

4.—Same—Continuance—Want of Diligence.

Where the application for continuance showed upon its face a want of diligence to procure process for the absent witness to secure his attendance, there was no error in overruling the motion. Following Hunter v. State, 59 Texas Crim. Rep., 439, and other cases.

5.—Same—Charge of Court—Practice on Appeal.

Where the failure to give a requested charge touching the specific intent of the defendant was an omission which, in the absence of proper exceptions can not be reviewed by this court, there was no reversible error. Following Crossett v. State, 74 Texas Crim. Rep., 440, and other cases.

Appeal from the District Court of San Augustine. Tried below before the Hon. Garland Smith, Special Judge.

Appeal from a conviction of murder; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*W. T. Davis,* for appellant.—On question of special judge: Ehlinger v. Rankin, 29 S. W. Rep., 240; Brumby v. Boyd, 66 id., 874.

*E. B. Hendricks,* Assistant Attorney General, for the State.—On question of deadly weapon: Wright v. State, 73 Texas Crim. Rep., 178; Davis v. State, 73 id., 49; Mooney v. State, 176 S. W. Rep., 52; Gray v. State, 77 Texas Crim. Rep., 221, 178 S. W. Rep., 337.

On question of res gestae: Shumate v. State, 38 Texas Crim. Rep., 266; Fleming v. State, 54 id., 339; Muldrew v. State, 73 Texas Crim. Rep., 463, 166 S. W. Rep., 156.

On question of special judge: Cox v. Oliver, 43 Texas Civ. App., 110.

MORROW, JUDGE.—Appellant was convicted of murder. After verdict he raised the point that it should be set aside because of the illegality of the election of the special judge who tried the case.

It appears that the regular judge became an officer in the National Guard on the 19th day of July, 1917, and went on the payroll of the Federal government as an officer in the military service August 4, 1917. It appears that on the 16th of July, 1917, at a regular term of court, they elected the Hon. Garland Smith special judge, and that on August 1, 1917, while the special judge was presiding the appellant was tried.

He makes the point that the office of district judge became vacant upon the entry of the regular judge into military service and that the tenure of the special judge depended upon the continuance in office of the regular judge and that when the latter vacated his office his act in doing so operated to terminate the authority of the special judge.

Section 28, article 5, of the Constitution provides that vacancies in the office of district judge shall be filled by the Governor until the next succeeding election. Section 17 of article 16 of the Constitution provides: "All officers within this State shall continue to perform duties of their office until their successors shall be duly qualified." Construing this section, it has been held that a public officer could not arbitrarily divest himself of the obligation and authority to perform the duties of his office until his successor qualified, and that although he resigned, and his resignation be accepted, that notwithstanding the provision of the Constitution mentioned would operate to continue him in office until his successor qualified. McGhee v. Dickey, 23 S. W. Rep., 404, and cases cited; Harris' Constitution, p. 745, and cases listed.

It is believed, however, that when a judge of one of the courts of the State becomes an officer in the United States army that the matter of vacancy is not controlled by section 17 of article 16 of the Constitution, but is controlled by section 12 of said article, which provides, in substance, that no person holding or exercising any office of profit or trust under the United States shall be eligible to hold or exercise any office of profit or trust under this State. This conclusion is supported by the decision of the Supreme Court of this State in State v. DeGress, 53 Texas, 400. Other cases bearing on the subject are Bishop v. State, 149 Ind., 232, 63 Am. St. Rep., 286; Oliver v. Jersey City, 63 N. J. Law, 104, 42 Atl. Rep., 784. See also notes in 72 Am. Dec., 375, 12 L. R. A., 125.

It seems that when one accepts· an incompatible office with the one he holds he has the right of election to abandon one of them (Cyc., vol. 23, p. 518; Webb v. Reynolds, 160 S. W. Rep., 152); but that when an officer of the State accepts an office of profit in the military service of the United States his tenure as judge ceases by virtue of the constitutional provision contained in article 16, section 12, supra.

Applying this view to the facts of the present case, it appears that on the date following the election of the special judge, the regular judge vacated his office. Section 7 of article 5 of the Constitution contains the following provision: "The Legislature shall also provide for the holding of District Court when the judge thereof is absent or is from any cause disabled or disqualified from presiding." Article 1678, Vernon's Texas Civil Statutes, is as follows: "Whenever, on the day appointed for a term of the District Court, or at any time before the expiration of the term, or the completion of all the business of the court, the judge thereof shall be absent, or shall be unable or unwilling to hold the court, there shall thereby be no failure of the term, and no failure to proceed with the business of the court, but the practicing lawyers of such court present thereat may proceed to elect from among their number a special judge of said court, who shall proceed to hold said court and conduct the business thereof, and shall have all the power and authority of the judge of said court, during such continued absence or inability, and until the completion of any business begun before such special judge."

This statute was held by this court authorized by section 7 of article 5 of the Constitution in the case of Greer v. State, 65 S. W. Rep., 1075. The case of Wynn v. Edmondson, 150 S. W. Rep., 310, touches the same subject.

The question presented then is, did the term of court continue in session after the regular judge vacated his office, and was the special judge, elected before the office was vacated by the regular judge, authorized to continue to preside and continue business of the court.

It seems to us that the proper construction of the statute, article 1678, answers this question in the affirmative. The same question was before the Court of Civil Appeals in the case of Glover v. Albrecht, reported in 173 S. W. Rep., p. 504, in which the facts were that after the election of the special judge the regular judge, during the term of

court, died and the holding was that the term of court continued in session and the authority of the special judge did not cease upon the death of the regular judge. The court in deciding the case says it does not find the identical question passed upon, but cites as analogous Ellis v. State, 56 Texas Crim. Rep., 14; Edwards v. James, 13 Texas, 52; Harris v. Musgrave, 72 Texas, 18; Montgomery v. Viers, 130 Kent, 694, 114 S. W. Rep., 251; Franklin v. Vandervort, 40 S. E. Rep., 375. Another case throwing light on the subject is Ford v. Simmons, 171 S. W. Rep., 1077; Cyc., vol. 23, p. 611.

In addition to the view that by virtue of the statute under the facts of the case the special judge could continue to hold the term of court, it would seem his acts as judge would be valid against the attack made upon the principle that he was a de facto officer. There was an office and his possession of it was under color of authority, namely, the statute, and even if the conditions were such that he was not a judge de jure we discern no reason why he would not have been such de facto. See Ruling Case Law, vol. 8, p. 518; Cyc., vol. 29, p. 1391; 23 Cyc., p. 618.

The deceased was killed by a blow or blows inflicted with a missile of some kind. The indictment charged a hoe and a stick of wood, and there was evidence supporting these allegations. Appellant, his brother, mother and sister were together at church and after church, on the road fell in with the deceased, Leon Lee, Franklin Lee and other members of the Lee family. All the parties were negroes. A quarrel took place, growing out of an accusation, or supposed accusation, against appellant of stealing chickens, made by Franklin Lee. A fight ensued, in which several members of the party took part, and culminating in deceased receiving a blow on the head from which he died.

One of the witnesses testified that at the request of Franklin Lee he went to Franklin Lee's house to trace some chicken thieves, beginning at the chicken house, which had been broken open, and while he and Franklin Lee were tracing some tracks which he says were two or three hundred yards from old Jake Lowe's house, appellant approached them and asked Franklin Lee what he was doing, appellant having a knife in his hand; that he did not hear Lee's reply, but heard appellant say, "My God, I don't like for anybody to accuse me of stealing chickens." And Lee replied, "Ain't anybody accusing you of stealing chickens; we are just tracking these tracks to see where they went." That appellant followed along and other conversations took place which witness did not understand. This was objected to as tending to prove an independent disconnected crime. Neither the statement of facts nor bill of exceptions disclosed at just what time with reference to the homiside this conversation took place. There was an issue of self-defense and a controversy and conflicting evidence as to who began the difficulty in which deceased lost his life, and there was evidence that the difficulty arose over the accusation of appellant of chicken stealing made by Franklin Lee.

Testimony of the character disclosed in the bill, as we understand, is admissible under such circumstances as tending to show the state

of mind of the accused.  Such was the holding of the Supreme Court in an opinion of Chief Justice Roberts in Carr's case, 41 Texas, 543, which was adhered to by this court in Waters' case, 54 Texas Crim. Rep., 322, and in Howard's case, 25 Texas Crim. App., 69.  Also Hamblin v. State, 41 Texas Crim. Rep., 135.  For other cases see Branch's P. C., secs. 1881 and 1882.

A bill asserts that the court erred in admitting evidence of a witness who claimed that on the night of the difficulty, about sixty yards from where it occurred, he met Franklin Lee running, that at the time there was a racket going on at Canton's house (the place of the homicide), and Lee seemed to be coming from there, and remarked: "Go on down there, they are killing my boy." This was objected to as hearsay.

The record shows that Franklin Lee was one of the parties engaged in the difficulty and there is testimony that during its continuance he ran.  The witness whose testimony is objected to said that when he met Lee that a fuss was going on; they were talking loud and Lee was running.  This occurred within a short distance, fifty or sixty yards of the homicide.  We think this testimony was admissible as res gestae. Cases in point are Black v. State, 8 Texas Crim. App., 329; Fleming v. State, 54 Texas Crim. Rep., 339; Shumate v. State, 38 Texas Crim. Rep., 266; Phelps v. State, 15 Texas Crim. App., 45; Jeffries v. State, 9 Texas Crim. App., 598; McPhail v. State, 9 Texas Crim. App., 164.

Appellant made application for a continuance because of the absence of a witness by whom it was claimed proof could be made that he saw deceased at the church a short time before the difficulty and that the deceased sought to borrow a pistol from the witness declaring that he was going to have a reckoning with the Lowe negroes about stealing chickens the night before.  The appellant contends that the trial court abused his discretion in overruling the application.  It appears that the homicide took place in August, 1916; that the indictment was returned on January 5, 1917; that a subpoena was applied for on July 6, 1917, stating that the residence of the witness was unknown and the subpoena was issued to Sabine County and returned with the endorsement that the witness was not found, that his residence was unknown; that the date of the return is not shown, but on the 24th day of July a subpoena was obtained to Cass County which was issued on the 28th day of July and returned on the 2nd of August not executed because witness was not found in Cass County.  The case was tried on the 1st day of August, 1917.  The failure to apply for a subpoena at an earlier date is not, we think, explained in a manner that would justify this court in holding that the trial court abused its discretion in refusing the application. See Hunter v. State, 59 Texas Crim. Rep., 539; Trinkle v. State, 59 Texas Crim. Rep., 257; Vernon's C. C. P., p. 319, note 32, and cases cited.  The application shows that at the time the subpoena was applied for, July 6th, the residence of the witness was unknown.  It appears that he was in the county where the homicide took place on the night of the homicide; that the subpoena was not applied for for more than six months after the indictment was filed.  When he ceased to

abide in the county, what efforts were made to ascertain his where-abouts in the meantime, whether the appellant knew of his departure or not, are matters upon which the application is silent and upon which there should have been averments setting up the facts upon which appellant relied as excusing delay. Yelton v. State, 75 Texas Crim. Rep., 38, 170 S. W. Rep., 318, and cases listed in Vernon's C. C. P., p. 307, note 4.

There were no exceptions filed to the court's charge which, with the special charges given, fairly submitted the issues with the exception of an omission to charge the law touching intent to be drawn from the use of the weapon. The weapon used was not per se a deadly weapon, and if requested a charge embodying the proposition that the intent to kill was not to be presumed unless from the manner in which the weapon was used, such intention evidently appeared, should have been given C. C. P., art. 1147; Vernon's C. C. P., p. 716. The failure to give such a charge was an omission which can not be reviewed by this court in the absence of a specific exception calling the trial court's attention to the matter, filed in a timely manner or an exception to the refusal of a special charge. C. C. P., art. 737a; Crossett v. State, 74 Texas Crim. Rep., 440, 168 S. W. Rep., 548; Wright v. State, 73 Texas Crim. Rep., 178; Conger v. State, 63 Texas Crim. Rep., 312; Frazier v. State, 62 Texas Crim. Rep., 640; Dowling v. State, 63 Texas Crim. Rep., 366; Vernon's C. C. P., art. 743, and cases listed on p. 525.

Finding no errors presented for review the judgment of the lower court is affirmed.

*Affirmed.*