## T. B. LOWE v. THE STATE.

### No. 4811. Decided November 13, 1918.

#### 1.—Murder—Companion Case—Practice on Appeal.

Where, upon appeal from a conviction of murder, the appellant claimed that the court below erred in overruling his motion for continuance, the disqualification of the special judge, and the admission of certain testimony, all of which questions were decided adversely to appellant in a companion case, there was no reversible error.

#### 2.—Same—Bills of Exception—Rules Stated—Practice on Appeal.

The rules prescribing the requisites of a bill of exceptions to the admission of testimony are well established and must be adhered to, and are now here again laid down according to precedent. Following Best v. State, 72 Texas Crim. Rep., 201. And to which another well established rule is added, namely, the legal presumption is that the ruling of the trial court was correct, unless the bill of exceptions shows otherwise.

#### 3.—Same—Charge of Court—Sufficiency of the Evidence.

Where, upon trial of murder, the court gave a full, apt and complete charge presenting every issue that was raised by the testimony, and the evidence showed that defendant was one of the principals who killed deceased, the judgment must be affirmed.

Appeal from the District Court of San Augustine. Tried below before the Hon. Garland Smith, Special Judge.

Appeal from a conviction of murder; penalty, ten years imprisonment in the penitentiary.

The opinion states the case.

*Wm. McDonald* and *W. T. Davis,* for appellant.

*E. B. Hendricks,* Assistant Attorney General, for the State.

PRENDERGAST, JUDGE.—Appellant was indicted in the same indictment with Dinke Lowe, Emma Jane Phillips and Gracie Lowe for the murder of Leon Lee on August 16, 1916. These four defendants were principals in the commission of the alleged murder. They severed and appellant and Dinke Lowe were tried separately. They each were convicted and appealed. This court affirmed the Dinke Lowe case, which is reported in 83 Texas Crim. Rep., 134. A sufficient statement was made in the Dinke Lowe case so that it further is unnecessary in this.

Appellant herein, as Dinke Lowe did on his appeal, claimed that the court erred in overruling his motion for a continuance, and not admitting the testimony of a certain witness about tracing chicken thieves from the chicken house of Franklin Lee, and to the disqualification of the special judge elected and who tried these cases. All three of these questions were decided adversely to appellant in said Dinke Lowe case. It is unnecessary to further state or discuss them.

The only other questions raised are presented by two bills of exception to the admission of certain testimony.

The rules prescribing the requisites of a bill of exceptions to the admission of testimony are well established. They are of long standing in this court. None of them are new. They have been established and enforced from the very creation of this court, and even before. They are plainly laid down in sections 857 and 1123 of Judge White's Ann. C. C. P., wherein he cites some of the cases. In addition, they are also laid down in 1 Branch's Ann. P. C., in sections 207 to 210, inclusive, wherein he collates a very large number of the decisions of this court. Some of these rules, taken from Judge White's book, are repeated in the opinion of this court in Best v. State, 72 Texas Crim. Rep., 201, and before Mr. Branch's work was ever published. We will here quote them from said decision in the Best case:

"1. The allegations of the bill should be full and explicit so that the matters presented to the court on appeal for revision may be comprehended without recourse to inferences.

"2. They should be so explicit as to enable the court on appeal to fully understand all the facts upon which the correctness or error of the rulings depends, otherwise they will not be considered.

"3. It must set out the proceedings in the court below sufficiently to enable the court on appeal to know that an error has been committed. It must be so full in its statements that in and of itself it will disclose

all that is necessary to manifest the supposed error and must state enough of the evidence, of facts proven, to render intelligible the ruling excepted to.

"4. It can not be aided either by a statement in reply to a motion for new trial or by the statement of facts.

"5. It controls even the statement of facts.

"6. Objections or the mere statement of the ground of objection in the bill, is not the certificate of the judge that what is stated is true. It is the mere objections of the party.

"7. Inferences will not be indulged to supply omissions to them. Nor will the court, on appeal, supply omissions, nor aid the bills by inferences or presumptions. . . .

"9. A bill to the admission of evidence is incomplete and insufficient which simply states the grounds of objections to the errors, but fails to state as matters of fact the matters upon which the objections were predicated."

To these we add another well established rule taken from Mr. Branch in the second paragraph of section 207: "The legal presumption is that the ruling of the trial court was correct unless the bill of exceptions shows otherwise." Citing cases directly so holding.

It is useless now to discuss the propriety and necessity of bills of exception meeting these requirements. If they had not been adopted and were not enforced this court in every defective bill will be required to search the whole record to ascertain if an error had been committed, in this instance, of the admission of certain testimony. Take this case as an illustration. The statement of facts herein is seventy-one pages of full typewritten matter. Other records are frequently very much more voluminous and would entail very much diligent search over a very much greater mass of matter to ascertain what, if true, could have been pointed out in a bill in only a page or two at most. The trend of legislation for many years and the decisions of this court appear to simplify the work of this court in such matters by requiring appellants to comply with these rules which could easily be done by them instead of forcing that labor upon the judges of this court.

The said rules should be enforced in all cases, if they are enforced at all. All appellants should be treated alike. The rule should not be overlooked or omitted of enforcement in one case and enforced in another.

With these principles and rules in mind, we will now quote said bills. Each is headed with the number and style of the case and term of the court and has the usual "be it remembered." And then his bill No. 3 states that on the trial of said cause: "The State offered as a witness in the case, one, Ada Canton, and the court, over the objection of the defendant, permitted the said Ada Canton to testify as follows:

" 'She (meaning Gracie Lowe) came on in the house and asked me was I asleep, and I said no; she came on in and said Leon was dead. I said yes, I heard the noise over there; I heard about it, and I heard

them before I heard it. She said she hated it, but it couldn't be helped, and she stood there a few minutes, and went on outdoors, and when she got out there, she called me and I went on out, and she said I want to see you and your boys, I want you and your boys to be as light as you can, not know nothing about it at all, and get your boys not to know nothing about it. She says, where is Jim? I says, he is in the house, and that time he came on the gallery and she called him out there, and she wanted him not to know anything about it and be as light as he could. Jim said, yes, ma'am. I said, Gracie, I don't believe in smuggling nothing like that, as plain as that is; I can't smuggle nothing like that. She said, I don't care, it ain't any more for my boys to go to the pen than anybody else. She went over to the other fence and got on the steps and sat down. I just leaned back against the fence with my back to her this way. She said, Ada, come here a minute. I went over the fence where she was at. She said, do you see that hoe. I said, yes. She said, that is the hoe that Dinke killed Leon with. I said, what are you going to do with my hoe. She said, I was fixing to make way with it. I got the hoe and carried it on back to the yard and went on. She said she was fixing to make way with it. I got my hoe and carried it back. The first time they came over there that night, they came to hunt money. That is the hoe that I took away from Willie Lowe. That is the hoe they carried over into the Brooch's farm.'

"To all of which testimony, when offered by the State, the defendant objected because all of the proof in the record showed that the transaction had been over for more than one hour, as indicated by the record and by the witness, and the defendant on trial was not present, as shown by the record at the time of the declarations and conduct of Gracie Lowe, as testified to by the witness and is, therefore, not bound by any acts or declarations of the said Gracie Lowe or any other person with reference to the transaction under inquiry." Then follows the statement that the court overruled his objections and permitted the testimony to go to the jury, to which he excepted. An examination of this bill will show that it does not comply with any of the rules above quoted so as to entitle it to consideration by this court. It is unnecessary to enumerate wherein it fails to meet the requirements, they are so apparent. His objections in the bill were mere objections and were approved merely as such and not as a statement of fact by the judge. It would not be difficult to determine that such testimony was admissible on many grounds.

His bill No. 4 is: "The State offered as a witness Dr. C. W. Spears, who was permitted by the court over the objections of the defendant to testify as follows:

" 'I was acquainted with Emma Jane Phillips during her lifetime. I don't remember the date when she died; I remember it was some time in the spring. Before she died I was called over there to see her. I didn't have any conversation especially with her while I was there

in regard to Leon Lee's death, in regard to the transaction that occurred over there when he was killed. I heard her make some remarks about it. I don't remember. I wouldn't be positive who it was she was talking to, but I was there in the room and some darkey was in there, some negro woman; my recollection is it was her aunt, but I am not sure about that. There was several there that wasn't in the room, but they were on the place. There was only one in the room at that time. The first thing the party that asked me to go over there wanted to know if she really had consumption. She had been told she did have by some and by some not, and they wanted to be satisfied about it; and I told her I thought she did, I didn't think she was going to live long, I thought she had tuberculosis and about the last state. Then this woman was in there and she commenced talking to them, commenced crying, and told them she had tried to get her mother, she had asked her mother to send and get Myrtle, I think it was, something like that. I didn't know who that was. I only know from hearsay, say that that was Leon Lee's wife; I didn't know it then; I understand now that that was Leon Lee's wife. She wanted to make friends with them, and said something—I don't remember just how she brought that in—but that she wasn't the one that killed Leon, or something to that amount, that she was in the fight, 'We were all in the fight' (I think was the words) but that Dinke was the one that hit him with the hoe. That was about the substance of it, and she commenced crying. As to whether or not she wanted to tell Leon's wife about it beforehand, will say it seemed that she wanted to get them over there and talk about the matter before she died. That is the way I took it by the conversation.'

"To all of which testimony, when offered, the defendant then and there excepted, because the transaction was long since over. It was not shown that the defendant was present at the time of the conversation, and, therefore, the defendant could not be bound by any acts or declarations of said Emma Jane Phillips; that the testimony offered was incriminating as to the defendant, and, therefore, prejudicial to his rights before the jury." The same observations can be made to this as to his bill No. 3. Neither of them are in accordance with said rules so as to require consideration as they are presented to this court.

The court gave a full, apt and complete charge presenting every issue that was raised by the testimony. He charged and submitted the law of murder, of principals, of manslaughter, of self-defense. There was no complaint of the charge in any particular. In his charge he expressly withdrew from the jury and told them not to consider it for any purpose the testimony of said Ada Canton, objected to by appellant's third bill, and he also instructed the jury not to consider the testimony of Dr. Spears for any purpose except such testimony he gave which tended to impeach or contradict the statement of Emma Jane Phillips which was introduced and read to the jury by defendant.

The testimony was ample to show that appellant, as one of the principals, killed deceased.

The judgment is affirmed.

*Affirmed.*