THOMAS J. DIX v. THE STATE.

No. 21617. Delivered October 22, 1941.
Rehearing Denied November 26, 1941.

608

The opinion states the case.

*Wiseman & Murray,* of Floresville, for appellant.

*Herbert G. Tigner* and *King C. Haynie,* both of Houston, for appellant on motion for rehearing.

*Spurgeon E. Bell,* State's Attorney, of Austin, for the State.

BEAUCHAMP, Judge.

Appellant was convicted in the district court of Wilson County on a charge of unlawfully and fraudulently passing as true to P. H. Stanford a forged instrument. His punishment was assessed at five years in the penitentiary. The offense is alleged to have been committed in Webb County and the case was tried on a change of venue. This case was before this court in a former appeal on a question not raised at this time. 136 Texas Crim. Rep. 296, (124 S. W. (2d) 998.)

It is disclosed that appellant, who had experience in another state both in the oil business and in operating a refinery, came to Laredo and other places in the southern part of the State during the year 1936, and engaged in an effort to purchase a refinery in Webb County which required rehabilitation. Apparently he had little, if any, funds of his own to invest, but represented, according to the State's theory, to Mr. Stanford, a banker, that he had some bonds of the American Telephone & Telegraph Company, which he proposed to place as collateral to secure a loan. It is appellant's theory as a defense that they were furnished to him by one Carl Silver who engaged himself to procure finances for defendant's enterprise, for which

Silver was to receive a commission of $20,000.00 He says that Silver secured $80,000.00 worth of bonds to be used as collateral with the option to take them up and substitute other like bonds in their stead. Admittedly, Silver brought the bonds in a package and delivered them to defendant in a hotel room when no one else was present. Defendant took them at once and placed them in a lock box in the bank. Such transaction was unusual for the amount involved and would have created suspicion in the mind of any experienced man that something was wrong. The jury must have so concluded. It also appears without contradiction in the record that these bonds were forgeries bearing the same numbers in a series that had actually been issued, but which had been called and cremated prior to the date of the transaction in question. Such testimony was given by an official of the company and we find no denial of that fact in the record.

One of these bonds, being No. M1-820 in the sum of One Thousand Dollars due February 1, 1965, and bearing five per cent interest, and eleven others of the same series, were placed with P. H. Stanford, who was Vice President and Cashier of what was at the time the Union State Bank & Trust Company of Laredo, as security for a loan of Ten Thousand Dollars with said bank. Mr. Stanford testified that when the bonds were presented to him he called attention to the fact that they had been called in and that Mr. Dix explained that the reason he had not turned them in was because he wanted to exchange them for some railroad bonds of the New York Central and others; that if he turned them in and got the money he would have to pay an enormous income tax and that he would rather retain them and exchange them for some other bonds later on. This is inconsistent with appellant's testimony in the case as to his acquisition of them and his ignorance of the forgery.

When the case was called for trial appellant presented his motion for continuance based on the absence of two witnesses. In his application he set up the things he expected to prove by each of these witnesses. During the progress of the trial one of the witnesses appeared and testified. The other did not, but it is our conclusion from the record that the testimony of Dix on the witness stand is wholly inconsistent with the evidence which he set out in his application that the absent witness would give. It was also set out that appellant had gone through a great mental and physical strain on account of numerous trials and settings for a trial of his case and that he was unable to render his attorney proper assistance in the conduct of the defense of his case because it involved many and complicated

transactions. The qualification which the Judge attaches to this bill as filed by appellant entirely destroys the force and effect of the last complaint. An application for continuance based on the illness of a defendant is addressed to the sound discretion of the trial judge and before this court would be justified in saying that he had abused that discretion it should clearly appear from the record that he had done so. We find nothing in the least degree indicating such abuse of discretion. To the contrary it appears that appellant attended the trial, took the witness stand and withstood a searching examination by the prosecution on the various steps taken in the transaction involved; that he answered the questions consistently with his theory of defense. Taking into account the whole record, we are unable to find any injury shown to him physically or that his case was not properly presented because of his physical condition. (Tysinger v. State, 13 S. W. (2d) 698.) The trial court had the defendant before him. He was in position to observe his physical appearance and in the absence of any testimony or any affidavit from a physician to the contrary, we will not disturb the implied findings of the trial judge. (Perales v. State, 161 S. W. 482; 9 Tex. Jur. Sec. 89 p. 768.)

The second bill relating, also, to the motion for a continuance, as above stated, is on the ground of the absence of Ed S. Russell, a banker, and M. J. Raymond, an attorney. The latter appeared and testified. The former did not, but, as observed, the evidence which he expected Russell to give was inconsistent with appellant's own testimony as to the transaction involved. This bill of exception is overruled under the authority of Yelton v. State, 170 S. W. 318; Wilson v. State, 53 S. W. (2d) 43; Kaylor v. State ,85 S. W. 806.

During the progress of the trial defendant called Mr. Kazen, district attorney, to testify in his behalf. While on the stand Kazen voluntarily made the statement that appellant was convicted at a former trial. According to the qualifications of the bill the court at once reprimanded him for making the gratuitous statement and instructed the jury not to consider it. We find ourselves unable to agree, under all the circumstances of this case, that the State is correct in its contention that the court's charge to the jury entirely removed the harm from their mind. Neither do we consider it necessary to do so in order to properly dispose of the question, for it is a well settled rule that a party to a suit, civil or criminal, cannot be held responsible for the uninvited, harmful statements of the opposing party's

witness. To hold such would place it within the power of a litigant to place on the stand his own witness who could make a voluntary damaging statement in order to create reversible error. Obviously such would invite unfair, as well as unethical, practices. It is likewise well settled that such complaint cannot be sustained. (Mobley v. State, 232 S. W. 531.) A line of civil cases may be cited on the same subject.

A number of bills of exception are lodged against the ruling of the court in admitting testimony of other transactions than that alleged in the indictment wherein the defendant used other bonds out of the $80,000.00 worth delivered to him by Silver in the purchase, rehabilitation and operation of the refinery in question. It is the State's contention that these transactions are admissible as showing intention and that they are circumstances to be considered by the jury on the question of guilty knowledge. If the bonds were forged, and the evidence seems clear that they were, each transaction would be a separate offense. If appellant had no knowledge of the forgery, but in good faith believed them to be genuine, the other transactions would constitute no offense against the law. Just how the other transactions would show guilty knowledge or tend to do so under the explanation given by appellant does not appear. If it had been shown that he had on other occasions or at other places negotiated a similar deal by which bonds or other instruments had been used as collateral in a similar manner and it had developed that they, too, were forgeries, it would then appear to be of value indicating intention, but where all of the bonds are of the same series, and they are a part of the same transaction, that is the purchase and financing of the refinery, we cannot so view it. However, appellant himself took the stand in his own defense and told in detail the transactions by which Carl Silver was to secure finances for him. The bonds in the total sum of $80,000.00 were placed with him for that purpose and it became incumbent upon him to show that he, in good faith, used them for that purpose. It is, therefore, our view that appellant himself in his own proper defense gave testimony concerning the other transactions, to which there is no objection, that fully revealed all of the facts included in the evidence of which complaint is made; and, furthermore, that it was essential for him to do so in order to make plausible the story of the transaction in question relating to his dealing with the bank by which he borrowed the $10,000.00, and not for the purpose of rebutting or explaining any of the evidence of these transactions which the State had introduced. Having

so stated the source from which he obtained the bonds, his purpose in doing so and the use to which he placed the remainder of the $80,000.00 worth in his possession, he has covered in a general way, if not specifically, all of the evidence about which complaint is made in the bills under discussion. Such evidence so completely links together his dealing as to make them inseparable parts of the transaction by and for which he acquired the $80,000.00 bonds and purchased the refinery.

A great many bills of exception are lodged against the court's charge and it appears that the court has carefully taken care of all the things which appellant had in mind. A lengthy discussion of them will not be helpful.

We are unable to understand the harm to appellant by reason of the introduction in evidence of Silver's pictures as complained of in appellant's brief. It seems to be the appellant's theory that because the two pictures were on the same card, one a front view and the other a side view, that it carried the idea that he was a convict. This is fanciful. Furthermore, it is appellant's position that Silver had given him these forged bonds and all blame for them is left with Silver, who was not a witness for appellant, and any reflection against him could not affect appellant's rights in the least.

Appellant complains that there is insufficient evidence in the record to show that he had any knowledge that the bonds were forgeries. The various telegrams and communications between Dix and Silver constituted circumstances which the jury might and in all probability did consider. When presenting the bonds to the bank appellant said nothing about the ownership being in someone else and failed to mention Silver's interest in the matter, but, to the contrary, when the banker called his attention to the fact that this series of bonds had been called, he explained that if he turned them in he would have to pay an enormous income tax and that he would rather retain them and exchange them for some other bonds later on. This is entirely inconsistent with his evidence to the effect that they belonged to others. He also stated that he knew the bonds had been called, thereby claiming a personal knowledge concerning them. He told the banker that he had gotten them in a trade and this was also inconsistent with his testimony. The jury had the evidence before them; it was within their power to reach a conclusion as to what actually took place and all the facts and circumstances, including all of the dealings which appellant had with Silver, were proper evidence as presented by both sides for

the jury to consider on the question of guilty knowledge. We think they were justified in their conclusion.

Finding no reversible error in the record before us, the judgment of the trial court is affirmed.

## ON MOTION FOR REHEARING.

KRUEGER, Judge.

In his motion for rehearing appellant complains of several matters as erroneous in our original opinion.

He insists that we erred in holding that no error is reflected by Bill of Exception No. 3 in which he complains of a statement made by the witness Kazen to the effect that appellant had theretofore been convicted. Appellant placed Kazen on the witness-stand, who, in the course of his examination in chief by appellant's counsel, made the statement complained of. He claims now that this was an unwilling and hostile witness and for that reason we should make an exception to the general rule. To do so would, in our opinion, establish a dangerous doctrine for reasons clearly stated in the original opinion. Moreover, there is nothing in the record to show that Kazen was an unwilling or hostile witness.

His next contention is that we erred in not holding as erroneous the court's instruction on circumstantial evidence because the court prefaced its instruction on the subject as follows: "In this case the State relies in part on circumstantial evidence for a conviction." This statement should not have been made by the court. See Murray v. State, 113 Tex. Cr. R. 98; Germany v. State, 109 Tex. Cr. R. 180. However, the charge as a whole relative to the law of circumstantial evidence was correct. Moreover, we find no objection to the court's charge on the subject which specifically pointed out to the trial court the error here complained of. Under Article 658, C. C. P., appellant is required to specifically point out his objections to the court's charge. His failure to do so at the proper time will be of no avail to him on appeal.

The other complaint addressed to the original opinion is without merit.

Having reached the conclusion that the case was properly decided on the original submission, we therefore overrule his motion for rehearing.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.