

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

October 11, 1991

The Honorable Thomas R. Phillips
Chairman
Judicial Districts Board
P. O. Box 12248, Capitol Station
Austin, Texas 78711

Opinion No. DM-49

Re: Whether a justice of the Supreme Court of Texas would violate any provision of the Texas Constitution or a state statute by serving as a member of the Board of Directors of the State Justice Institute (RQ-109)

Dear Chief Justice Phillips:

In your capacity as chairman of the Judicial Districts Board,[1] you have asked whether a justice of the Supreme Court of Texas would violate the Texas Constitution, article XVI, section 12, section 33, or section 40, or any other constitutional provision or statute by serving as a member of the Board of Directors (the "board") of the State Justice Institute (the "institute"). Your query requires us to examine both the federal statutory scheme establishing the institute and its board, and the state constitutional prohibitions against dual office holding.

## The State Justice Institute

The institute is a private, nonprofit corporation created by and organized pursuant to federal law. *See* 42 U.S.C. § 10701 *et seq.* The purpose of the institute is to further the development of improved judicial administration in state courts. *Id.* § 10702(a). Its duties include directing a national program to provide funds to state courts and national organizations that support or are supported by state courts, fostering coordination between the state and federal judiciaries and encouraging education for state judges and state judicial personnel. *Id.* § 10702(b). The institute's organic statute authorizes extensive federal appropriations to fund the institute and its programs. *Id.* § 10713. While the organic statute provides that "[e]xcept as otherwise specifically provided in this chapter, the institute shall not be considered a department, agency, or instrumentality of the Federal Government," *id.*

---

[1]*See* Tex. Const. art. V, § 7a.

§ 10704(c)(1), it also provides that the institute is subject to the federal Freedom of Information Act[2] and has rulemaking authority, *id.* §§ 10702(f), 10704(e). The board's responsibilities with respect to the institute include establishing policies, funding priorities, and rules and regulations; developing programs; appointing and fixing the duties of the executive director; and presenting recommendations regarding state judiciaries to pertinent entities of the federal government. *Id.* § 10703(k)(1) - (4). The board is also expressly required to award grants and enter into cooperative agreements and contracts on behalf of the institute. *Id.* §§ 10703(k)(6), 10705(a).

The board consists of six judges, one state court administrator, and four members of the public. *Id.* § 10703(a)(2). Board members are appointed by the President, by and with the advice and consent of the Senate. *Id.* § 10703(a)(1). The President is required to select the judge and administrator members from a list of candidates submitted by the Conference of Chief Justices. *Id.* § 10703(a)(3). Board members generally serve for three-year terms and may be reappointed for subsequent terms. *Id.* § 10703(b), (c). Each board member has one vote. *Id.* § 10703(f). The board members are required to hold regular meetings on a quarterly basis. *Id.* § 10703(i). Board members serve without compensation but are reimbursed for their expenses. *Id.* § 10703(d). The organic statute also contains the following provision: "The members of the Board shall not, by reason of such membership, be considered officers or employees of the United States." *Id.* § 10703(e).

To determine whether Texas law precludes a justice of the Supreme Court of Texas from serving as a member of the board of the institute, we turn to the Texas Constitution, article XVI, sections 12, 33, and 40, the constitutional provisions pertaining to dual office holding.

## The Constitutional Dual Office Holding Provisions

Article XVI, section 40, provides in pertinent part that "[n]o person shall hold or exercise at the same time, more than one civil office of emolument." Section 33 provides:

> The accounting officers in this State shall neither draw nor

---

[2] 5 U.S.C. § 552.

> pay a warrant or check on funds of the State of Texas, whether in the treasury or otherwise, to any person for salary or compensation who holds at the same time more than one civil office of emolument, in violation of Section 40.

An elective judgeship, a paid position, is a "civil office of emolument" under sections 33 and 40. *See* Attorney General Opinions JM-594 (1986); JM-333 (1985); M-1194 (1972); M-409 (1969). By contrast, a member of the board of the institute does not receive a salary and is entitled only to reasonable expenses,[3] and therefore does not hold a "civil office of emolument." *See* Attorney General Opinions M-1194; M-842 (1971). Thus, neither section 40 nor section 33 would prohibit a justice of the Supreme Court of Texas from serving as a member of the board of the institute.[4] Section 40 also explicitly *exempts* various state and federal offices (including justices of the peace, county commissioners, notary publics, postmasters, officers of the National Guard, National Guard Reserve and Officers Reserve Corps, and retired officers and enlisted soldiers of the various United States military forces) from the dual office holding prohibitions of sections 12 and 33.[5] Section 40, however, does not provide an exemption for either justices of the Supreme Court of Texas or members of the board of the institute.

---

[3]*See* 42 U.S.C. § 10703(d).

[4]In November 1972, the voters amended section 33. *See* S.J.R. 29, Acts 1971, 62d Leg., at 4133 (proposing constitutional amendment). Prior to that amendment, section 33 prohibited the compensation of a state officer "who holds at the same time any other *office or position of honor, trust or profit,* under this State or the United States." (Emphasis added.) While section 40 precluded a state officer only from holding two "*civil offices of emolument,*" *i.e.* compensated offices, section 33 precluded a state officer from holding any office, including an uncompensated office. *See* Attorney General Opinions M-1194; M-842. Thus, under the prior version of section 33, elected, salaried judges who accepted uncompensated positions were not entitled to receive any state compensation for their judicial positions. *See* Attorney General Opinion M-1194.

[5]Section 40 also provides that a nonelective state officer may hold other nonelective offices under the state or the United States, "if the other office is of benefit to the State of Texas or is required by the State or Federal law, and there is no conflict with the original office for which he receives salary or compensation." *See* V.T.C.S. art. 6252-9a (statutory provisions governing the dual office holding of nonelective state officers, invalidated in part by 1972 amendment to Texas Constitution article XVI, sections 33 and 40); *see also* Attorney General Opinion H-5 (1973).

Article XVI, section 12, provides:

> No member of Congress, nor person holding or exercising any office of profit or trust, under the United States, or either of them, or under any foreign power, shall be eligible as a member of the Legislature, or hold or exercise any office of profit or trust under this State.

Section 12, except as provided by article XVI, section 40, generally precludes any person who holds an office of profit or trust under the State of Texas from holding an office of profit or trust under the United States. As noted above, the provisions of article XVI, section 40, exempting some state and federal positions from the general prohibition against dual office holding are inapplicable here.

The scope of section 12 is quite extensive. The interpretive commentary to this constitutional provision notes that while the common-law doctrine of incompatibility of public offices did not inhibit dual office holding where the positions were not incompatible, "the provision in the Texas constitution establishes an *absolute prohibition* against double office holding, and hence it is immaterial whether the offices would be considered incompatible at common law." (Emphasis added.) The consequences of holding two offices are considerable. A state officer who accepts an office of profit or trust under the United States automatically abandons his state office and is no longer entitled to compensation for state office. *See Centeno v. Inselmann*, 519 S.W.2d 889, 890 (Tex. Civ. App.--San Antonio 1975, no writ); *Lowe v. State*, 201 S.W. 986, 987 (Tex. Crim. App. 1918); Attorney General Opinion M-409.

A justice of the Supreme Court of Texas clearly holds an "office of profit or trust under the State of Texas." *See Lowe v. State, supra.* Thus, a justice is precluded from serving as a member of the board of the institute if that position is an office of profit or trust under the United States. Pursuant to title 42, section 10703(d), of the United States Code, members of the board are reimbursed for their expenses but serve without compensation. Thus, the position is not an office of "profit." *See* Attorney General Opinion MW-360 (1981) (person who is entitled to reimbursement for travel expenses but whose position is uncompensated pursuant to federal regulations does not hold office of profit under article XVI, section 12). Therefore, the critical issue is whether the position is an office of trust under the United States. *Id.*

Under Texas law, the determination whether a position is an office of trust under the United States for purposes of article XVI, section 12, involves a number of considerations. First, we consider the legal basis of a position and its duties, including its mode of appointment[6] and statutory genesis, to determine whether it is "under the United States." *See* Attorney General Opinion MW-360 at 2; *cf. Willis v. Potts*, 377 S.W.2d 622 (Tex. 1964) (holding that a councilman of a home rule city held an "office under this State" for purposes of article III, section 19, of the Texas Constitution because the position was created by the state constitution and performed duties imposed by the state). Second, we also consider whether a person holds "an office," or is merely a ministerial federal employee or serves in an essentially advisory position. The key to this determination is whether the person is to be delegated "some of the sovereign functions of the United States Government." Attorney General Opinion MW-360 at 2 (quoting Attorney General Opinion C-527 (1965)). "An office" is a position that

> possess[es] a delegation of a portion of the sovereign power of government -- authority to exercise some portion of the sovereign power -- independent of any superior human authority other than a statutorily prescribed general control.

Letter Advisory No. 85 (1974) at 4 (quoting *Lasher v. Commonwealth*, 418 S.W.2d 416, 417 (Ky. 1967)); *see also Green v. Stewart*, 516 S.W.2d 133, 135 (Tex. 1974); *Aldine Indep. School Dist. v. Standley*, 280 S.W.2d 578, 583 (Tex. 1955). Finally, this office has also considered, to a lesser extent, the stability and duration of a position, requiring that to constitute "an office," a position must have some modicum of permanency and continuity, such as is provided by an appointment for a fixed term. Attorney General Opinions JM-847 (1988) at 5; O-4313 (1942). *See generally* Attorney General Opinion M-409 (setting forth constitutional criteria for "office").

Applying the foregoing principles, we conclude that membership on the board is an office of trust under the United States. First, and most important, the position is created by federal law and a board member is appointed by the President with the advice and consent of the Senate. In addition, the board's duties are

---

[6]While the mode of appointment is relevant to whether a position is one "under the United States," *see, e.g.*, Attorney General Opinion MW-360 at 2, this office has expressly eschewed reliance on mode of appointment as the sole factor in determining whether a person holds "an office of profit or trust," or is merely an employee or serves solely in an advisory position. *See* Letter Advisory No. 85 (1974).

imposed by federal law. Thus, we conclude that board membership is a position "under the United States" for purposes of the Texas Constitution. *See* Attorney General Opinion MW-360 at 2 (concluding that position created by federal law and appointed by the President was a position "under the United States"). Second, a board member is not merely a ministerial employee of the federal government nor does a board member serve solely in an advisory capacity. Indeed, the board members are expressly charged with the duty to establish policy and funding priorities for the institute, to issue rules and regulations for the institute, and to distribute federal funds in the form of grants and cooperative agreements or contracts. *See* 42 U.S.C. § 10703(k).[7] Thus, we conclude that the federal organic statute delegates to a member of the board some of the sovereign functions of the United States Government independent of any superior authority. Finally, a board member generally serves for fixed three-year terms and is required to attend meetings on at least a quarterly basis. Thus, we conclude that the position involves continuous service for a substantial period of time such that it clearly constitutes "an office."

In sum, membership on the board of the institute is an office of trust under the United States for purposes of the dual office holding prohibition of article XVI, section 12, of the Texas Constitution. The exemptions to the general prohibitions against dual office holding set forth in article XVI, section 40, do not apply to the office of justice of the Supreme Court of Texas or the office of member of the board of the institute. Therefore, a justice of the Supreme Court of Texas would be precluded from accepting an appointment as a member of the board under the Texas Constitution.

## The Supremacy Clause of the United States Constitution

As noted above, the institute's organic statute provides that members of the board are not to be considered officers or employees of the United States. *See* 42 U.S.C. § 10703(e). In light of our conclusion that a member of the board holds "an office of profit or trust under the United States" for purposes of article XVI, section 12, of the Texas Constitution, we must consider whether the supremacy clause of the

---

[7]The legislative history of the statute indicates that prior to the creation of the institute, federal funding for projects involving state courts was administered by the United States Department of Justice. *See* S. Rep. No. 480, 98th Cong., 2d Sess. 3, *reprinted in* 1984 U.S. CODE CONG. & ADMIN. NEWS 5728, 5731.

United States Constitution[8] requires the federal organic statute's characterization of the position to prevail over that compelled by Texas law.[9] We conclude that it does not.

The United States Supreme Court has held that state law is pre-empted under the supremacy clause under three circumstances. *English v. General Elec. Co.*, 110 S.Ct. 2270, 2275 (1990). First, Congress can define explicitly the extent to which its enactments pre-empt state law. *Id.* Second, in the absence of explicit statutory language, state law is pre-empted where it regulates conduct in a field that Congress intended the federal government to occupy exclusively. *Id.* Where the field is one that has been traditionally occupied by the states, congressional intent to supersede state laws must be "clear and manifest." *Id.* (citations omitted). Finally, state law is pre-empted to the extent it actually conflicts with federal law. Thus, the Court has found pre-emption where it is impossible for a private party to comply with both state and federal requirements, or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (citations omitted).

None of these circumstances is applicable here. First, Congress has not explicitly stated the extent to which the organic statute pre-empts state laws pertaining to dual office holding or the characterization of federally-created positions under such laws. Indeed, as discussed below, Congress appears to have had no such purpose.

Second, the field of state dual office holding prohibitions is one that has been traditionally occupied by the states. Thus, congressional intent to supersede such state laws must be clear and manifest. *Id.* Nothing in the legislative history of the organic statute indicates that Congress intended the federal government to regulate state office holders' capacity to serve on the board or to otherwise hold federally-created offices, let alone to regulate that field exclusively. Indeed, the legislative history of the organic statute suggests that Congress had a very different purpose in mind in providing that members of the board would not be considered officers or employees of the United States. *See* S. Rep. No. 480, 98th Cong., 2d Sess. 1,

---

[8]U.S. Const. art. VI, cl. 2.

[9]When a federal statute and a state constitution conflict, the supremacy clause of the United States Constitution requires that the provisions of the federal statute prevail. *Alabama-Coushatta Indian Tribe of Texas v. Mattox*, 650 F. Supp. 282, 289 (W.D. Tex. 1986).

*reprinted in* 1984 U.S. CODE CONG. & ADMIN. NEWS 5728. Prior to the enactment of the organic statute, the United States Department of Justice and the state executive branches had been directly involved in the appropriation of federal funds for the improvement of state judicial administration. This arrangement threatened to upset the delicate balance between the branches of government and the federal and state governments, implicating the federal constitutional law doctrines of separation of powers and federalism. *See id.* at 5739-40, 5742.[10] Congress appears to have drafted the organic statute to provide that the institute is not an instrumentality of the United States and that members of the board are not to be considered officers or employees of the United States to remove the administration of federal funding for state courts from the executive branch of the federal government in an attempt to avoid those constitutional difficulties. *Id.* at 5739. Thus, we conclude that Congress did not intend to define membership on the board for purposes of state laws pertaining to dual office holding or to otherwise regulate state office holders' capacity to serve on the board.

Finally, we conclude that article XVI, section 12, of the Texas Constitution is not pre-empted on the ground that it actually conflicts with federal law. This is not a case where conflicting laws make it impossible for a private party to comply with both state and federal requirements. The federal organic statute does not *require* individuals to serve as members of the board of the institute. Nor is this a case where state law stands as an obstacle to the accomplishment of the objectives of Congress. First, the general objective of the federal organic statute is to improve the quality of the administration of justice in state courts primarily by providing funding to state courts and other entities. The Texas Constitution's prohibition against justices of the Supreme Court of Texas serving as members of the board does not thwart that general objective. Second, the purpose of the particular section

---

[10]As the Senate Report states,

> there were serious difficulties with an arrangement, whereby a department of the federal executive branch ... was in a position to influence, by funding decisions, programs undertaken by or on behalf of state and local courts. This was particularly ironic because in the federal government, in an attempt to maintain the delicate balance of separation of powers, the control of federal funding to improve the federal courts was removed from the Department of Justice and placed independently in the judicial branch of the federal government.

*Id.* at 5739.

that provides that members of the board shall not be considered officers or employees of the United States appears to be to preserve the balance between the branches of government and between the federal and state governments. The fact that justices of the Supreme Court of Texas are precluded from serving on the board does not thwart that specific objective. In sum, because Congress' concern in adopting title 42, section 10703(e), of the United States Code was to remove the administration of federal funding for state courts from the executive branch of the federal government to avoid federal constitutional difficulties and not to regulate state office holding, we conclude that the federal statute is not in actual conflict with article XVI, section 12, of the Texas Constitution.

## S U M M A R Y

A justice of the Supreme Court of Texas holds "an office of profit or trust under this State" for purposes of article XVI, section 12, of the Texas Constitution, which prohibits dual office holding. A member of the Board of Directors of the State Justice Institute, created pursuant to title 42, section 10701 *et seq.*, of the United State Code holds an office of trust under the United States for purposes of article XVI, section 12. The federal statute which provides that board members shall not be considered officers or employees of the United States does not pre-empt the state dual office holding provision. Therefore, article XVI, section 12, bars a justice of the Supreme Court of Texas from accepting an appointment as a member of the board.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY (Ret.)
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General