ORVILLE S. CARPENTER v. GEORGE H. SHEPPARD, COMPTROLLER OF PUBLIC ACCOUNTS, ET AL.

No. 7798. Decided October 24, 1940.
Rehearing overruled November 22, 1940.
(145 S. W., (2d) Series, 562.)

414

*Dan Moody, Everett L. Looney, Looney & Clark,* and *Charles L. Black,* all of Austin, *Claude V. Birkhead* and *Robert Lee Bobbitt,* of San Antonio, and *Blalock, Blalock, Lohman & Blalock,* of Houston, for relator.

The amendments to Sections 33 and 40 of Article 16 of the State Constitution, adopted by the people in 1926 and readopted in 1932, expressly authorized an officer of the National Guard to hold "in conjunction with such office" and other "office or position of honor, trust or profit, under this State" and thereby consented that such officer might perform all the duties appertaining to an office in the National Guard, including the duty to respond to all calls or orders of the Federal service. Gaal v. Townsend, 77 Texas 464; Smith v. Grayson County, 44 S. W. 921; State v. Degress, 53 Texas 387.

*Gerald C. Mann,* Attorney General, *R. W. Fairchild* and *Geo. W. Barcus, Ocie Speer* and *Houston Buss Hill,* Assistants Attorney General, for respondent.

A civil officer of the State of Texas ordered into the active military service of the United States under his appointment and commission by the President of the United States as a major in the National Guard of the United States, in the Army of the United States, during his service as such major holds and exercises an office of profit and trust under the United States, not an office in the "National Guard of Texas," and by the provisions of Article 16, section 33, of the Constitution, is not entitled to salary or compensation as a civil officer of the State for and during the time he holds such office in the active military service

of the United States. Dickson v. People, 17 Ill. 191; Dorenfield v. State, 123 Texas 467, 73 S. W. (2d) 83; Travelers Ins. Co. v. Marshall, 124 Texas 45, 76 S. W. (2d) 1007.

*Cantey, Hanger, McMahon, McKnight & Johnson, Ira Butler, Frank P. Culver, Jr., Chester B. Collins, Gillis A. Johnson, Warren Scarborough* and *Frank Taylor,* all of Fort Worth, and *Clark C. Wren,* of Austin, Texas, filed briefs as amici curiae.

MR. JUSTICE SHARP delivered the opinion of the Court.

Orville S. Carpenter by original mandamus proceedings seeks to compel the Honorable George H. Sheppard, Comptroller of Public Accounts of the State of Texas, to issue and deliver to him a warrant against the State Treasurer of the State of Texas for the salary to which he is entitled for the full month of September, 1940, and to compel the Honorable Charley Lockhart, State Treasurer of the State of Texas, to pay such warrant when presented to him.

Orville S. Carpenter will hereinafter be called Relator, and George H. Sheppard and Charley Lockhart will hereinafter be called Respondents.

The following alleged facts constitute the basis for such mandamus proceedings: That Relator is a resident citizen of the State of Texas, and on February 15, 1937, was appointed a member and made Chairman and Executive Director of the Texas Unemployment Compensation Commission for the term ending November 21, 1940. That on September 27, 1937, his appointment was duly confirmed by the State Senate of the State of Texas; that he took the oath of office, and has been since then and is now a duly qualified and acting member and the Chairman and Executive Director of said Commission, and has been and is now performing, and throughout the month of September, 1940, did perform, all the duties pertaining to such office. That Respondent George H. Sheppard is the duly elected and qualified and acting Comptroller of Public Accounts of the State of Texas, and that Respondent Charley Lockhart is the duly elected and qualified and acting Treasurer of the State of Texas.

That Relator is a member of the National Guard of the United States and of the State of Texas, and that on the 28th day of December, 1938, he was duly commissioned by the Governor of Texas with the rank of Major in said National Guard and assigned to the State Staff Corps; that he has been given Federal recognition with the rank of Major in the National Guard of the United States and of the State of Texas, and that

on the 30th day of January, 1939, he was commissioned with the rank of Major in the National Guard of the United States in the Army of the United States, and that he now holds said rank in said service.

That pursuant to the proclamation of the President, under authority of Public Resolution No. 96, S. J. Res. 286, Chapter 689, Acts of the 76th Congress, 3rd Session, approved August 27, 1940, 50 U. S. C. A. Appendix, 401 et seq., Relator was by command of Major General Brees ordered to active duty, effective September 19, 1940, for a period of twelve months, unless sooner relieved, and assigned to the Eighth Corps Area Service Command and detailed to duty with the Military Department of the State of Texas at Austin, Texas, for duty in connection with selective service planning of the State of Texas under Public Law No. 783, S. 4164, Chapter 720, Acts of the 76th Congress, 3rd Session, known as the Selective Training and Service Act of 1940, 50 U. S. C. A. Appendix, 401 et seq., being an Act to provide for the common defense by increasing the personnel of the armed forces of the United States and providing for their training; that in obedience to said order Relator reported for the performance of the duties assigned to him thereunder, and has been discharging such duties since September 19, 1940, and has not been relieved therefrom.

That Relator has prepared and presented to Respondent George H. Sheppard, in the manner and form required by law, an affidavit and certificate showing that he has performed the services required of him by law as a member and Chairman and Executive Director of the Texas Unemployment Compensation Commission, and all other facts required by the laws of Texas to entitle him to receive payment of his salary as such member and Chairman and Executive Director of the Texas Unemployment Compensation Commission, and that he has, in the manner and form required by law, demanded of the said George H. Sheppard the issuance of a warrant in payment of his salary as such officer for the full month of September, 1940.

That the Legislature of Texas appropriated money to pay the yearly salaries of the members of the Texas Unemployment Compensation Commission, including the Chairman and Executive Director, in twelve equal monthly installments, and such funds are available for the payment of the salary due him for September, 1940.

That Relator during the month of September, 1940, including the period from September 19, 1940, to September 30, 1940, discharged all duties imposed upon him by law as a member and Chairman and Executive Director of the Texas Unemploy-

ment Compensation Commission, and by virtue of that fact and his being a member and Chairman and Executive Director of the Texas Unemployment Compensation Commission he is entitled to draw the salary of said office for the full month of September, 1940, which is now due him and has not been paid.

That Respondent George H. Sheppard has refused to issue to Relator a warrant for his salary as a member and Executive Director of the Texas Unemployment Compensation Commission, as above described, for the full month of September, 1940, and that in response to Relator's demand therefor said Respondent has replied: "I have been informed that you were mustered into the Federal Service September 19, 1940, and in accordance with the Attorney General's opinion No. O-2769 I am issuing a warrant for services rendered from September 1st through September 18, 1940."

Relator further contends that he is entitled to a warrant for his salary for the entire month of September, 1940, and that the only reason for Respondent George H. Sheppard's refusal to issue same is because of Relator's having been ordered to military duty as herein alleged.

The Attorney General takes issue with the Relator and contends that he vacated his office as a member of the Texas Unemployment Compensation Commission on September 19, 1940, when on such date he entered the active military service of the United States, and in such service holds and exercises the office of Major, an office of profit and trust under the United States, and that to permit him to hold the two offices would violate Section 12 of Article 16 of the State Constitution, which reads:

"No member of Congress, nor person holding or exercising any office of profit or trust, under the United States, or either of them, or under any foreign power, shall be eligible as a member of the Legislature, or hold or exercise any office of profit or trust under this State."

The sole question for decision here is: When an officer in the National Guard of Texas responds to the call of the President of the United States for one year's military training under the Joint Resolution of Congross approved by the President on August 27, 1940, does this act on his part constitute him an officer of the United States Army and make him no longer an officer of the State National Guard, thereby vacating the State office held by him?

That this State retains a right, concurrent with that of the United States Government, to organize and train its militia,

is clearly recognized in Section 8 of Article 1 of the Constitution of the United States and Section 46 of Article 16 of the Constitution of Texas. For a discussion of this right see Houston v. Moore, 5 Wheat. 1, 16, 5 L. Ed. 19. By virtue of such concurrent authority, the Legislature of this State has made detailed provisions for the organization, equipment, and functioning of the State militia. See Title 94, Chapters 1, 2, 3, and 4, Article 5765 et seq., R. C. S. 1925. The active militia is by statute now called the Texas National Guard. Article 5765, R. C. S. 1925. This Act, now Article 5890b, R. C. S., was enacted at the Regular Session of the 45th Legislature, 1937, Chapter 366. *

That the National Guard plays an important part in the military program of this country can hardly be questioned. It is not only a potential part of the United States Army in time of peace, but is subject to be called into service by both the State and the National Governments. Article 5830 et seq., R. C. S. 1925.

The applicable Federal legislation provides:

" * * All persons so ordered into the active military service of the United States shall from the date of such order stand relieved from duty in the National Guard of their respective States, Territories, and the District of Columbia so long as they shall remain in the active military service of the United States, and during such time shall be subject to such laws and regulations for the government of the Army of the United States as may be applicable to members of the Army whose permanent retention in active military service is not contemplated by law. The organization of said units existing at the date of the order into active Federal service shall be maintained intact insofar as practicable." 32 U. S. C. A., sec. 81.

In the same section of the National Defense Act it is further provided that, when such enlisted men and officers in the State National Guard are relieved from active duty in the military service of the United States, "all individuals and units shall thereupon revert to their National Guard status."

We quote the following provisions from the National Defense Act as amended.**

---

*See opinion on rehearing, post, p. 426.

---

**See opinion on rehearing, post, p. 426.

"The President has the authority to call all or a part of the National Guard, as part of the militia of the United States, into the service of the United States whenever the country is invaded or in danger of invasion from any foreign nation, or there is rebellion or danger of rebellion against the authority of the Government, or the President is unable with the regular forces at his comman to execute the laws of the Union.

* * * * * * * *

"The President has authority to order the National Guard of the United States, as a part of the Army of the United States, into the active military service of the United States when Congress shall have declared a national emergency and authorized the use of armed land forces in excess of those of the Regular Army.

* * * * * * * *

"When any or all parts of the National Guard are called as such into the service of the United States, they become a component of the Army of the United States but their units and members retain their State status as Federally recognized units and members of the National Guard in a state of temporary suspension."

A brief review of the attitude of the people of this State towards the status of the members of the National Guard of Texas will be helpful in a consideration of this question. In 1918 the Court of Criminal Appeals, in the case of Lowe v. State, 83 Texas Cr. R. 134, 201 S. W. 986, held that a district judge who was an officer of the National Guard of Texas and went on the pay roll of the Federal Government as an officer in the military service, thereby vacated his office as judge. In 1922 the Court of Criminal Appeals, in Ex parte Dailey, 93 Texas Cr. R. 68, 246 S. W. 91, 26 A. L. R. 138, held that a district judge did not vacate his office as district judge by accepting appointment as a captain in the National Guard of Texas, there being no showing that he had been called into the active service of the United States.

The foregoing cases discussed the constitutional provisions then in force in this State. In order to put at rest the question as to whether or not the Constitution of Texas would permit officers of the National Guard of Texas, and other officers mentioned therein, to hold public office in Texas when called as members of the National Guard into service by the President, the Legislature submitted two amendments to the voters of Texas for adoption, Acts 1931, pp. 931, 932, as follows:

"SEC. 2. That Section 33 of Article 16, of the Constitution of the State of Texas, be amended so as to read as follows:

" 'Section 33. The Accounting officers of this state shall neither draw nor pay a warrant upon the Treasury in favor of any person, for salary or compensation as agent, officer or appointee, who holds at the same time any other office or position of honor, trust or profit, under this State or the United States, except as prescribed in this Constitution. Provided, that this restriction as to the drawing and paying of warrants upon the Treasury shall not apply to officers of the National Guard of Texas, the National Guard Reserve, the Officers Reserve Corps of the United States, nor to enlisted men of the National Guard, the National Guard Reserve, and the Organized Reserves of the United States, nor to retired officers of the United States Army, Navy, and Marine Corps, and retired warrant officers and retired enlisted men of the Uinted States Army, Navy and Marine Corps.'

"SEC. 3. That Section 40 of Article 16 of the Constitution of the State of Texas be amended so as to read as follows:

" 'Section 40. No person shall hold or exercise, at the same time, more than one Civil Office of emolument, except that of Justice of the Peace, County Commissioner, Notary Public, and Postmaster, Officers of the National Guard, the National Guard Reserve, and the Officers Reserve Corps of the United States and enlisted men of the National Guard, the National Guard Reserve, and the Organized Reserves of the United States, and retired officers of the United States Army, Navy, and Marine Corps, and retired warrant officers, and retired enlisted men of the United States Army, Navy and Marine Corps, unless otherwise specially provided herein. Provided, that nothing in this Constitution shall be construed to prohibit an officer or enlisted man of the National Guard, and the National Guard Reserve, or an officer in the Officers Reserve Corps of the United States, or an enlisted man in the Organized Reserves of the United States; or retired officers of the United States Army, Navy, and Marine Corps, and retired warrant officers, and retired enlisted men of the United States Army, Navy, and Marine Corps, from holding in conjunction with such office any other office or position of honor, trust or profit, under this State or the United States, or from voting at any Election; General, Special or primary in this State when otherwise qualified.' "

The foregoing constitutional amendments were submitted to the people of Texas and were adopted in 1932.

Article 5766, R. C. S. 1925, provides that: "all able-bodied male citizens, and able-bodied males of foreign birth who have declared their intention to become citizens, who are residents of this State and between eighteen and forty-five years of age, and who are not exempted by the laws of the United States or of this State, shall constitute the militia and be subject to military duty."

Article 5768, R. C. S. 1925, provides that the Governor shall be Commander-in-Chief of the military forces of the State, except such members as may be at times in the service of the United States, and Article 5779, R. C. S. 1925, authorizes the Governor to appoint officers necessary to commence or complete such organizations.

Article 5837a of the General Laws of the 40th Legislature, Chapter 183, relating to the action of Texas in accepting the National Defense Act, enacted and amended by the Congress of the United States, among other things provides that the State of Texas recognizes the right of the President of the United States to call into the military service of the United States the Texas National Guard for certain duties, and further provides:

"On the termination of the emergency all persons so called or drafted who shall be discharged from the army shall resume their membership in Texas National Guard and in the Texas National Guard Reserve, and shall continue to serve until the dates upon which their commissions or enlistments entered into prior to the call or draft, would have expired if uninterrupted, unless sooner discharged."

■ Relator was a member of the National Guard of Texas and an officer in it when he was called into service for National military duty. When he was called for service in the United States Army he did not resign as an officer in the National Guard of Texas. He was called to serve in the United States Army, not as a private citizen, but because he was an officer in the National Guard of Texas,—and for no other reason. If he had not been an officer in the National Guard, he would not have been subject to call by the Congress or by the President. Wherever Relator goes while under such call, he still will be, so far as Texas is concerned, an officer in its National Guard.

The National Guard is one of the favorite branches of our military forces. Past experience taught this country that it was necessary during peacetime to have a trained and efficient Army, in the event war should occur. Those who enlist in the National

Guard perform a patriotic service to our country. They show a willingness to protect the welfare of our country in time of peace, and to defend it in time of war. The members of the National Guard sacrifice their time and business to be trained for efficient service when needed. The foregoing constitutional amendments were adopted for the very purpose of not penalizing those who were members and officers of the National Guard. It may well be assumed that the welfare of public business would be considered by those who have the power to call into service a State official who is an officer in the State National Guard. It is clearly not the purpose of those in authority to neglect any branch of our Government, either National or State. Furthermore, this record does not show that Relator has neglected to perform the duties of his office, or that he will do so in the future. To assume otherwise would be to assert a condition that this record does not sustain. Relator shows that he is filling his office and performing his public duties while serving his country as an officer under call of the President.

■ The final argument is made that the administration of the public business of the State would suffer if it should be held contrary to the contentions made by the Attorney General. These difficulties are all the concern of the Legislature and for it to solve, and not for the courts. The Legislature has already made provision for someone else to handle the business of various departments of government, in case of the illness of the heads of such departments or their inability to serve. It has recognized that there would result a serious interference in the conduct of public business in the event the Attorney General should be ill for a year and for that reason incapable of performing his duties of office, and so the Legislature has provided for a First Assistant Attorney General. (Article 4412, R. C. S. 1925.) A similar provision has been made in the case of the Secretary of State (Article 4340), the Comptroller of Public Acccounts (Artile 4352), the State Treasurer (Article 4376), and the Commissioner of the General Land Office (Article 5255.)

■ If the Legislature should conclude that an officer in the National Guard cannot perform the duties of the office held by him in this State, while temporarily in the active military service of the United States, it may make provision for such inability, just as it has made similar provisions in respect to other State officers, where the head of the department is unable for any reason to perform the duties of the office. It may ad-

just salaries on account of failure to perform the duties assigned to officers. Section 10, Article 16, Constitution.

█ The complete answer to the contentions made by the Attorney General is the plain and specific language used in Sections 33 and 40 of Article 16 of the Constitution, above copied herein. Those amendments reflect the will of the people of this State with reference to the members of the National Guard. The clear policy of this State with respect to that matter is plainly expressed therein. The people have the right to change that policy if they desire. That right does not rest either with the courts or with any other branch of the State Government. Courts should presume that the people intended to do precisely what they have done in adopting those amendments. This presumption should be indulged in willingly, and not grudgingly. The courts are not concerned with the wisdom or lack of wisdom of a constitutional amendment. Courts need not exert their ingenuity to find reasons to thwart the intention of the people clearly expressed in the Constitution, which is the supreme law of the land. When this policy so expressed is established, it "supplants all other laws and rules that are inconsistent with it." Gillespie v. Lightfoot, 103 Texas 359, 127 S. W. 799, 801.

This Court, in an opinion by Chief Justice Phillips, in Simmons v. Arnim, 110 Texas 309, 324, 220 S. W. 66, used the following language with respect to the duty of courts in construing statutes, and what is said there is clearly applicable where courts are construing constitutional provisions:

"Courts must take statutes as they find them. More than that, they should be willing to take them as they find them. They should search out carefully the intendment of a statute, giving full effect to all of its terms. But they must find its intent in its language and not elsewhere. They are not the lawmaking body. They are not responsible for omission in legislation. They are responsible for a true and fair interpretation of the written law. It must be an interpretation which expresses only the will of the makers of the law, not forced nor strained, but simply such as the word of the law in their plain sense fairly sanction and will clearly sustain."

██ It is not the province of this Court to solve difficulties of a purely legislative nature, but that duty rests exclusively with the Legislature itself. It is not the province of this Court to solve a condition that does not exist. We do not have before us a case where an office has been neglected and the business of

the public unattended to; but, on the contrary, this record shows that the duties of that office are being performed and that the administration of its affairs is being carried on. The arguments made by Respondents are based upon suppositions, and not upon actual conditions. We must assume that those who are in charge of the military affairs of this Nation and this State will conduct themselves so as to protect the rights of the people and the administration of their affairs by their public officers.

■ By virtue of Sections 33 and 40 of Article 16 of the Constitution, we hold that Relator did not vacate his office as a member and Chairman and Executive Director of the Texas Unemployment Compensation Commission, when called into the military service of the United States and appointed an officer therein. We further hold that his appointment as Major in the United States Army does not violate Section 12 of Article 16 of the Constitution. Therefore he is entitled to be paid his salary.

The Attorney General's Department has shown much zeal and ability in presenting its contentions in this case. While this Court must hold contrariwise, it does so without any reproach on that Department, which is rather to be commended for deciding to present this important matter for the Court's review and decision.

The writ of mandamus as prayed for by Relator will be granted, and the Honorable George H. Sheppard, Comptroller of Public Accounts of the State of Texas, is directed to issue and deliver to Relator a warrant against the State Treasury of the State of Texas for his salary for the full month of September, 1940, to which he is entitled, and the Honorable Charley Lockhart, State Treasurer of the State of Texas, is directed to pay such warrant in due order.

Opinion adopted October 24, 1940.

#### ON MOTION FOR REHEARING.

In our original opinion we quoted certain provisions as being contained in the National Defense Act, when in fact these provisions are really contained in the Army Regulations adopted in pursuance of such Act. We desire now to make certain changes in our opinion so as to show the correct source of these quotations.*

---

*See original opinion, page 419.

The Army Regulations relating to the National Guard contain the following provisions:

"The President has the authority to call all or a part of the National Guard, as part of the militia of the United States, into the service of the United States whenever the country is invaded or in danger of invasion from any foreign nation, or there is rebellion or danger of rebellion against the authority of the Government, or the President is unable with the regular forces at his command to execute the laws of the Union. See sec. 4, act January 21, 1903 (32 Stat. 776), as amended by sec. 3, act May 27, 1908 (35 Stat. 400) ; 32 U. S. C. A. 81a; M. L., 1929, sec. 1295; secs. 1 and 101, National Defense Act, as amended. (10 U. S. C. A. sec. 2, 32 U. S. C. A. sec. 82).

"The President has the authority to order the National Guard of the United States, as a part of the Army of the United States, into the active military service of the United States when Congress shall have declared a national emergency and authorized the use of armed land forces in excess of those of the Regular Army. See secs. 1 and 111, National Defense Act, as amended.

"When any or all parts of the National Guard are called as such into the service of the United States, they become a component of the Army of the United States but their units and members retain their State status as Federally recognized units and members of the National Guard in a state of temporary suspension. * * * See 29 Ops. Atty. Gen., 322, 1911-1912; secs. 4 and 5, act January 21, 1903 (32 Stat. 776), as amended by act May 27, 1908 (35 Stat. 400) ; 32 U. S. C. A. 81a; M. L., 1929, sec. 1295; and sec. 101, National Defense Act, as amended." (32 U. S. C. A. sec 82).

We delete from our original opinion the following statement: "This Act, now Article 5890b, R. C. S., was enacted at the Regular Session of the 45th Legislature, 1937, Chapter 366."*

■ The Attorney General in substance contends in his motion for rehearing that this Court erroneously held in its original opinion that the calling of relator to service as a member of the National Guard of the United States did not result in his vacating the civil office held by him in this State, and that such holding violates certain provisions of the law passed by Congress. The Attorney General contends that the following

*See original opinion, page 419.

Federal statute upholds his contention that relator has vacated his State office by assuming the status of an officer in the United States Army under the conditions shown by this record:

"No officer of the Army on the active list shall hold any civil office, whether by election or appointment, and every such officer who accepts or exercises the functions of a civil office shall thereby cease to be an officer of the Army, and his commission shall be thereby vacated." Title 10, Section 576 U. S. C. A.

Furthermore, in support of this contention the Attorney General strongly relies upon the following cases, among others: United States ex rel. Gillett v. Dern, Secretary of War, et al, 74 Fed. (2d) 485, and Thomas L. Fekete, Jr., v. City of East St. Louis, 315 Ill. 58, 145 N. E. 692, 40 A. L. R. 650.

The provisions of the statute above quoted do not, either directly or by implication, sustain the contention of the Attorney General. If it should be held that this relator occupies the status of an "officer of the Army on the active list," and that the State office he now holds is a "civil office," both within the meaning of the above statute—a question we do not decide, but leave to the Federal authorities to decide—still such statute makes no provision that an officer included within its terms vacates his civil office.

The real question before us is: Does relator by being called into the active service of the National Guard of the United States vacate the civil office held by him in the State? We are not called upon to decide whether he vacates his commission in the National Guard of the United States. That is a question for the Federal authorities to decide, and not for us to determine.

The case of Thomas L. Fekete, Jr., v. City of East St. Louis, supra, was decided on December 16, 1924, and the decision in that case was based on certain other decisions, among which was the opinion in Lowe v. State, 83 Texas Crim. Rep. 134, 201 S. W. 986. In the course of the opinion it was said:

"The identical question here involved was decided in Lowe v. State, 83 Texas Crim. Rep. 134, 201 S. W. 986. In that case a judge became an officer in the National Guard in 1917, and was later taken by the United States as an officer in the military service. Under a constitutional provision practically identical with ours, the court held when the judge accepted the position of an officer in the military service of the United States, and was placed on the pay roll as such, he vacated his office as judge."

As pointed out in our original opinion, Sections 33 and 40 of Article 16 of the Constitution of Texas were adopted for the purpose of avoiding the holding in the Lowe case. The case of Thomas L. Fekete, Jr., v. City of East St. Louis, supra, was decided long prior to the adoption of Sections 33 and 40 of Article 16 of the Constitution, and the opinion in that case is not applicable to the case before us. It is not in any way in point, or even persuasive. The case of United States ex rel. v. Dern, Secretary of War, supra, involved the construction of an Act of Congress wherein, in substance, it was provided that under the War Department Appropriation Act of 1933 an officer in the National Guard, receiving a pension from the United States, cannot, without surrendering the pension, receive benefits extended by the Federal Government to members of the State Militia. See act March 4, 1933, sec. 1 (47 Stat. 1589); act June 15, 1933 (48 Stat. 153). Thus it will be seen that the question involved in that case was the right to draw both a pension and compensation under the Federal laws. The question involved here was not involved in that case, and the court did not have before it for construction the provisions of a state constitution similar to Sections 33 and 40 of Article 16 of our Constitution. Therefore the opinion of the court in that case is not applicable here.

We have carefully considered the contentions made by the Attorney General in his motion for rehearing, and same are hereby overruled. With the corrections herein made, our former opinion stands.

Opinion delivered November 22, 1940.