

# THE ATTORNEY GENERAL
## OF TEXAS

**AUSTIN, TEXAS 78711**

CRAWFORD C. MARTIN
ATTORNEY GENERAL

May 21, 1971

Honorable Preston Smith
Governor of Texas
Capitol Building
Austin, Texas   78711

Opinion No. M-869

Re: Whether certain provisions of
Section 51-a, Article III of
the Constitution of Texas
authorize the Legislature to
specify limitations in excess
of the Eighty Million Dollar
($80,000,000.00) ceiling when
federal matching funds are
available for assistance
and/or medical care for or

Dear Governor Smith:

on behalf of needy persons?

You have requested the opinion of this office as to
whether the following provision contained in Section 51-a of
Article III of the Constitution of Texas:

> "Provided further, that <u>if</u> the limitations
> and restrictions herein contained <u>are found to
> be in conflict with</u> the <u>provisions of appro-
> priate federal statutes</u>, as they now are or as
> they may be amended <u>to the extent that federal
> matching money is not available to the state
> for these purposes, then and in that event</u>
> the Legislature is specifically authorized and
> empowered to prescribe such limitations and
> restrictions and enact such laws as may be
> necessary in order that such federal matching
> money will be available for assistance and/or
> medical care for or on behalf of needy persons."
> (Emphasis added.),

would authorize the Legislature to specify limitations in excess

of the Eighty Million Dollar ($80,000,000.00) ceiling when federal

matching funds are available for assistance and/or medical care

for or on behalf of needy persons.

In addition to the above quoted provision, Section 51-a

-4221-

of Article III of the Constitution of Texas, which was adopted

by the voters on August 5, 1969, also provides that:

"The Legislature shall have the power, by General Law, to provide, <u>subject to limitations herein contained</u>, and such other limitations, restrictions and regulations as may by the Legislature be deemed expedient, <u>for assistance grants to</u> and/or medical care for . . .

"(1) <u>Needy aged persons</u> who are citizens of the United States or noncitizens who shall have resided within the boundaries of the United States for at least twenty-five (25) years;

"(2) <u>Needy individuals who are totally and permanently disabled</u> by reason of a mental or physical handicap or a combination of physical and mental handicaps;

"(3) <u>Needy blind persons</u>;

"(4) <u>Needy dependent children</u> and the caretakers of such children;

". . .

". . . provided that the maximum amount paid out of state funds to or on behalf of any needy person shall not exceed the amount that is matchable out of federal funds; <u>provided that the total amount of such assistance payments only out of state funds on behalf of such individuals shall not exceed the amount of Eighty Million Dollars ($80,000,000) during any fiscal year</u> . . ." (Emphasis added.)

It may prove helpful at this point to provide a historical background regarding the adoption of constitutional provisions in the State of Texas relating to financial assistance authorized to be paid by the State of Texas to certain needy individuals.

Section 51 of Article III of the Constitution of Texas

in its original form as placed in the Constitution of 1876 was
a prohibition placed upon the Legislature that it:

> ". . . shall have no power to make any grant
> or authorize the making of any grant of public
> moneys to any individual, association of individuals,
> municipal or other corporations whatsoever . . ."

The above prohibition has been retained in Section 51 of Article
III of the Constitution of Texas from the date of the adoption of
the Constitution of 1876 to the present time.  It has not been
repealed.  Exceptions to such prohibition have been made from
time to time rather than repealing the prohibition.  Therefore,
in order to provide the payment of assistance to needy individuals,
various constitutional amendments permitting such assistance have
from time to time been adopted by the people of Texas.

In 1933, Section 51-a of Article III of the Constitution
of Texas was adopted which authorized the issuance and sale of
bonds of the State of Texas not to exceed the sum of $20,000,000.00,
". . . the proceeds of the sale of such bonds to be used in
financing relief and work relief to needy and distressed people
and in relieving the hardships resulting from unemployment . . ."
S.J.R. No. 30 of the 43rd Legislature, 1933.

In 1935, the Constitution was again amended so as to
authorize Old Age Assistance to "actual bona fide citizens of
Texas who are over the age of sixty-five (65) years . . ." H.J.R.

No. 19 of the 44th Legislature, 1935.  Article III, Section 51-b, Constitution of Texas.  The maximum grant out of State funds was $15.00 per month per recipient.

In 1937, the Constitution was amended to provide for assistance "to destitute children under the age of fourteen (14) years . . ."  H.J.R. No. 26-a of the 44th Legislature, 1937. Article III, Section 51-d of the Constitution of Texas.  The maximum grant out of State funds was not to exceed $8.00 per month for one child, nor more than $12.00 per month for children in one family, with a maximum overall limit out of State funds not to exceed $1,500,000.00 per year.

In 1945, the above referred to amendments were consolidated into Section 51-a of Article III of the Constitution of Texas, as well as broadening the class of citizens eligible to receive grants of public moneys by the State of Texas.  H.J.R. No. 13 of the 49th Legislature, 1945.  The foregoing limited payments out of State funds per individual to $20.00 for Old Age Assistance; provided no individual limit for Aid to the Blind; and removed the maximum for Aid to Dependent Children; and placed a $35,000,000.00 per year limit on State funds for the three programs combined.

In 1951, the Legislature submitted to the voters H.J.R. No. 6 of the 52nd Legislature, but such constitutional provision was defeated.  It would have eliminated citizenship and have reworded the residence requirements on all three

programs. It provided a maximum per individual Old Age Assistance recipeint of $30.00 out of State funds and raised the overall maximum out of State funds from $35,000,000.00 to $42,000,000.00.

In 1954, an amendment was made to Section 51-a of Article III of the Constitution of Texas. S.J.R. No. 7 of the 53rd Legislature. This provision provided a maximum of $20.00 out of State funds for Old Age Assistance per individual and raised the ceiling of total expenditures on the part of the State from $35,000,000.00 to $42,000,000.00.

In 1956, amendments to Article III, Section 51-b-1 were adopted. H.J.R. No. 30 of the 54th Legislature. This provided for Aid to the Permanently and Totally Disabled and placed a limit not to exceed $20.00 per month per individual, and a total overall maximum out of State funds not to exceed $1,500,000.00 per year.

In 1958, Section 51-a-1, Article III of the Constitution of Texas was added. H.J.R. No. 36 of the 55th Legislature. This provided for vendor medical care on behalf of Old Age Assistance, Aid to the Blind, Aid to Dependent Children and Aid to the Permanently and Totally Disabled. The only limit as to amounts was that the expenditure of State funds could not exceed payments out of Federal funds.

In 1957, an amendment was adopted to Section 51-a of

Article III of the Constitution of Texas.  H.J.R. No. 2 of the
55th Legislature.  This amendment placed a maximum of $25.00 per
Old Age Assistance recipient, or $21.00 until additional amounts
were matched by the Federal Government.  This provision raised
the ceiling from $42,000,000.00 to $47,000,000.00 payable from
State funds.

In 1962, an amendment was enacted to Section 51-a of
Article III of the Constitution of Texas.  S.J.R. No. 9 of the
57th Legislature.  This constitutional amendment raised the ceil-
ing from $47,000,000.00 to $52,000,000.00 for Old Age Assistance,
Aid to the Blind, and Aid to Dependent Children.  This provision
retained the maximum of $25.00 per individual Old Age Assistance
recipient.

In 1962, an amendment was made to Section 51-b of Article
III of the Constitution of Texas.  S.J.R. No. 7 of the 57th Legis-
lature.  It raised the ceiling in connection with the Aid to the
Permanently and Totally Disabled from $1,500,000.00 to $2,500,000.00.

In 1963, an amendment was made combining Sections 51-a
and 51-b-1 of Article III of the Constitution of Texas to be known
as Article 51-a.  It dealt with Old Age Assistance, Aid to the
Blind, Aid to Dependent Children and Aid to the Permanently and
Totally Disabled.  This provision raised the ceiling from
$52,000,000.00 to $60,000,000.00 and changed residence requirements

on all programs. The dollar maximum on individual Old Age Assistance cases was deleted. S.J.R. 21 of the 58th Legislature.

In 1965, an amendment combined Section 51-a and Subsections 51-a-1 and 51-a-2 of Article III of the Constitution of Texas to be known as Section 51-a of Article III of the Constitution of Texas. It provided for assistance grants for Old Age Assistance, Aid to the Blind, Aid to Families with Dependent Children and Aid to the Permanently and Totally Disabled, and medical assistance for all categories, and medical assistance for all non-categories. A $60,000,000.00 maximum on grants only was retained. H.J.R. No. 81 of the 59th Legislature.

In 1968, S.J.R. No. 41 of the 60th Legislature was submitted to the voters. This proposed constitutional amendment which would have raised the ceiling on State expenditures for the various programs from $60,000,000.00 to $75,000,000.00 was defeated by the voters.

S.J.R. No. 8 of the 61st Legislature, which was adopted on August 5, 1969, constitutes the present Section 51-a of Article III of the Constitution of Texas. The ceiling was raised from $60,000,000.00 to $80,000,000.00 on assistance grants which could be made to the four categories of recipients -- the aged (OAA), the blind (AB), the totally and permanently disabled (APTD) and dependent children (AFDC). Out of the additional $20,000,000.00,

the sum of $15,000,000.00 was appropriated for each fiscal year beginning on September 1, 1969, and ending on August 31, 1971.

See also the case of Jefferson v. Hackney, 304 F.Supp. 1332 (N.D. Texas, 1969) for a further historical background of the constitutional amendments pertaining to public welfare assistance.

On May 18, 1971, the voters of Texas defeated a proposed constitutional amendment, S.J.R. 5 of the 62nd Legislature, Regular Session, 1971, which would have removed the limitation or ceiling upon State expenditure for assistance grants to the needy aged, needy disabled, and needy blind, but would have retained a limitation or ceiling upon assistance grants for needy children and the caretakers of such children.

On May 20, 1971, S.J.R. 57 and S.J.R. 58 were introduced in the Legislature. Each of such proposed amendments to Section 51-a of Article III of the Constitution of Texas would remove the ceiling or limitation upon assistance grants to the four categories of welfare recipients.

The foregoing historical review of the constitutional amendments, concerning State expenditures for assistance grants to welfare recipients, discloses that for over thirty-five (35) years the Legislature has consistently followed a pattern of submitting constitutional amendments to the voters of the State of

Texas which would limit the increase in expenditures of State funds for welfare assistance grants to a specified amount or ceiling. The only proposed constitutional amendment submitted to the voters by the Legislature which would have removed the ceiling or limitation as to assistance grants to some recipients of public welfare was S.J.R. 5 which was defeated by the voters on May 18, 1971.

It is also enlightening to note at this point that S.J.R. 9, adopted by the voters on November 6, 1962, and which raised the limitation or ceiling upon welfare assistance grants from $47,000,000 to $52,000,000, was initially introduced in a form which would have completely removed the limitation or ceiling. See the Senate Journal for the 57th Legislature, Regular Session, 1961, pp. 1330-1333. In addition, S.J.R. 21, adopted by the voters on November 9, 1963, and which raised the welfare assistance grant ceiling or limitation from $52,000,000 to $60,000,000, was also initially introduced in a form which would have completely removed such limitation or ceiling. See the Senate Journal for the 58th Legislature, Regular Session, 1963, pp. 144, 397, 1259, and House Journal for the 58th Legislature, Regular Session, 1963, pp. 1968-1971.

In this same vein, numerous proposed constitutional amendments have been introduced in the Legislature which had as their purpose the removal of the ceiling or limitation upon expenditure of State funds for welfare assistance grants. See

for example H.J.R. 16 of the 50th Legislature, 1947, Regular
Session (House Journal p. 206); H.J.R. 37 of the 54th Legislature,
1955, Regular Session (House Journal p. 603); H.J.R. 11 of the 55th
Legislature, 1957, Regular Session (House Journal p. 133).

In light of the foregoing historical background, it
is evident that the Legislature had not departed from some
thirty-five (35) years of custom or practice when it submitted
S.J.R. 8 of the 61st Legislature, Regular Session, 1969, the
present Section 51a of Article III of the Constitution of Texas,
to the voters. The present constitutional amendment authorizing
assistance grants to welfare recipients once again raised the
ceiling but did not remove it.

In determining the meaning of a constitutional pro-
vision the court will give weight to a construction given it by
the legislative or executive branch of government. American
Indemnity Co. v. Austin, 112 Tex. 239, 246 S.W. 1019 (1922);
Hill County v. Sheppard, 142 Tex. 358, 178 S.W.2d 261 (1944);
Walker v. Baker, 145 Tex. 321, 196 S.W.2d 324 (1946); Koy v.
Schneider, 110 Tex. 369, 218 S.W. 479 (1920). A constitutional
provision is to be construed with a view of understanding the
intention of the voters, and their purpose should be ascertained
and followed. Cox v. Robinson, 105 Tex. 426 (1912); Williams v.
Castleman, 112 Tex. 193, 247 S.W. 263 (1922); Collingsworth County

v. Allred, 120 Tex. 473, 40 S.W.2d 13 (1931); Deason v. Orange County Water Control & Improvement District, 151 Tex. 29, 244 S.W.2d 981 (1952). No part of the constitution may be allowed to defeat another part of the constitution if by any reasonable construction the two can be made to stand together. Lastro v. State, 3 Crim.Rep. 363 (1878). An interpretation that would produce conflict between provisions of the constitution will be avoided, and the provisions will be so construed, if possible, so as to reconcile apparent repugnancies and give effect to every part. Holman v. Broadway Improv. Co., 300 S.W. 15 (Tex.Comm.App. 1927); Collingsworth County v. Allred, supra; Jones v. Williams, 121 Tex. 94, 45 S.W.2d 130 (1931); Texas National Guard Armory Board v. McCraw, 132 Tex. 613, 126 S.W.2d 627 (1939); Hanson v. Jordan, 145 Tex. 320, 198 S.W.2d 262 (1946).

Applying the foregoing gneeral provisions of law concerning the construction and interpretation of the provisions of our state constitution to the historical background of Section 51-a of Article III of the Constitution of Texas can lead to but one conclusion. The Legislature for over thirty-five (35) years has treated the limitation or ceiling contained in our Constitution as to welfare assistance grants as just that--a limitation or restriction upon the amount of state funds which could be appropriated and spent. Whenever it was sought to increase this ceiling or limitation, it was done by submitting a constitutional

assistance grants as just that--a limitation or restriction upon the amount of state funds which could be appropriated and spent. Whenever it was sought to increase this ceiling or limitation, it was done by submitting a constitutional amendment for action by the voters. (See the recommendation of the Report of the Senate Interim Committee on Welfare Reform --Breaking the Poverty Cycle in Texas-p. 52). All attempts by the Legislature to remove such ceiling or limitation have met with no success in the Legislature with the exception of S.J.R. 5 of the 62nd Legislature, Regular Session, 1971, which was submitted to the voters on May 18, 1971, and which was defeated. Certainly, no more striking example could be given to disclose the intention of the voters as well as the Legislature. Once the will of the voter has spoken, it is not for the courts or this office to supplant or thwart this decision of the electorate but to follow their mandate. See authorities previously cited. Also, if a change is to be effected into the Constitution, only the people can make it--the courts cannot and will not. Carpenter v. Sheppard, 135 Tex. 413, 145 S.W.2d 562 (1940).

Also, to construe one portion of Section 51-a of Article III of the Constitution of Texas in such a manner as to negate another portion of the Constitution is completely repugnant to the rules of construction previously cited. The initial provisions of Section 51-a of Article III of the Constitution clearly places a limitation or ceiling of $80,000,000 on the expenditure of state funds for welfare assistance grants. To construe the remaining portions of Section 51-a of Article III so as to completely remove such limitation would defeat the clear intent of both the voter and Legislature.

Consequently, we are of the opinion that none of the provisions of Section 51-a of Article III of the Constitution of Texas have the effect of removing the $80,000,000 limitation upon the expenditure of state funds for assistance grants to recipients of public welfare in the absence of any showing that such ceiling or limitation is in conflict with the provisions of appropriate federal statutes.

The authority granted to the Legislature in that portion of Section 51-a of Article III of the Constitution of Texas, to which you have referred in your opinion request, is a conditional authority. The Legislature is authorized to act only if:

> "(1) . . . the limitations and restrictions herein contained /Section 51-a of Article III/ are found to be in conflict with the provisions of appropriate federal statutes . . ., and, to the extent that

> "(2) . . . federal matching money is not available to the state for these purposes. . ." [1]

---

[1] The provisions of Section 51-a, Article III in question was initially proposed by H.J.R. 81 in 1965 and was approved by the voters on November 2, 1965, and has remained a portion of Section 51-a of Article III since such date being, once again incorporated into the amendment made to Section 51-a of Article III in 1969. A study of the Medical Assistance Act of 1967, Article 695j-1, V.C.S., enacted to implement the provisions and requirements of Title XIX of the Social Security Act (Social Security Amendments of 1965 - Public Law 89-97) and the programs which will ultimately have to be implemented by the states to comply with the provisions of Title XIX of the Social Security Act, lead to the conclusion that the Legislature undoubtedly inserted the provision in question in Section 51-a of Article III to gain authorization to ultimately implement these programs at a future date or as required by federal law. See in this connection Atty. Gen. Op. M-20 (1967) & M-23 (1967).

This then raises the question of whether the present limitations or ceilings upon state expenditure of funds for welfare assistance grants are in conflict with existing federal statutes.

In the case of King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 2C L.Ed.2d 1118 (1968) the court had before it certain questions pertaining to the operation of the AFDC programs (aid to needy children) in Alabama.  The Court in its opinion made the following observation:

> ". . . There is no question that States have considerable latitude in allocating their AFDC resources, since each State is free to set its own standard of need and to determine the level of benefits by the amount of funds it devotes to the program. . . ."  (Emphasis added.)

In addition, at page 319, footnote 15 provides that:

> "The rather complicated formula for federal funding is contained in 42 U.S.C. §603.  The level of benefits is within the State's discretion, but the Federal Government's contribution is a varying percentage of the total AFDC expenditures within each State. . . ."  (Emphasis added.)

In the case of Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970) the court stated in its opinion that:

> "We begin with a brief review of the general structure of the Federal Aid to Families With Dependent Children (AFDC) program, one of the four 'categorical assistance' programs established by the Social Security Act of 1935.

"The general topography of the AFDC program was mapped in part by this Court in King v. Smith, 392 U.S. 309 (1968), and several lower court opinions, in addition to the opinion below, have surveyed the pertinent statutory and regulatory provisions. While participating states must comply with the terms of the federal legislation, see King v. Smith, supra, the program is basically voluntary and states have traditionally been at liberty to pay as little or as much as they choose, . . ." (Emphasis added.)

In the case of Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970) the court stated that:

"In King v. Smith, supra, we stressed the states' 'undisputed power' under these provisions of the Social Security Act, 'to set the level of benefits and the standard of need.' Id., at 334. We described the AFDC enterprise as 'a scheme of cooperative federalism 'id., at 316, and noted carefully that ' /̄t̄/here is no question that states have considerable latitude in allocating their AFDC resources, since each state is free to set its own standard of need and to determine the level of benefits by the amount of funds it devotes to the program. 'Id., at 318-319.'

"Congress was itself cognizant of the limitations on state resources from the very outset of the federal welfare program. The first section of the Act, 42 U.S.C. §601 (1964 ed., Supp. IV), provides that the Act is

'For the purpose of encouraging the care of dependent children in their own homes or in the homes of relatives by enabling each state to furnish financial assistance and rehabilitation and other services, as far as practicable under the conditions in such state, to needy dependent children. . . .'" (Emphasis by the Court.)

These recent decisions by the United States Supreme Court completely negate the possibility that there presently exists any conflict between the monetary limitation or ceiling that Section 51-a of Article III of the Constitution of Texas places upon the expenditure of state funds for assistance grants to welfare recipients and federal legislation in this area.

Consequently, as there exists no conflict between the monetary limitations of Section 51-a of Article III of the Constitution of Texas and the Social Security Act of 1935, as amended, the conditional authorization given to the Legislature in that portion of Section 51-a of Article III which is the subject of this opinion remains inoperative, and does not authorize the Legislature to appropriate funds in excess of $80,000,000 for assistance grants to the four categories of welfare assistance.

It should be noted at this point that expenditures of state funds for medical assistance to welfare recipients has no ceiling or limitation placed upon it by the provisions of Section 51-a of Article III of the Constitution of Texas.

### S U M M A R Y

None of the provisions of Section 51-a of Article III of the Constitution of Texas have the effect of removing the $80,000,000 limitation or

ceiling upon the expenditure of State funds
for assistance grants to recipients of public
welfare in the absence of any showing that
such ceiling or limitation is in conflict with
the provisions of appropriate federal statutes.

The authority granted to the Legislature in
the penultimate paragraph of Section 51-a of
Article III of the Constitution of Texas is a
conditional authority which would only become
operative in the event that the limitations or
restrictions contained in Section 51-a of
Article III are found to be in conflict with
federal statutes.

The monetary restrictions or limitations
upon the expenditure of state funds for assistance
grants to recipients of welfare assistance found
in Section 51-a of Article III of the Constitution
of Texas are not in conflict with the corresponding
provisions of the Social Security Act of 1935, as
amended. King v. Smith, 392 U.S. 309, 88 S.Ct.
2128, 20 L.Ed.2d 1118 (1968); Rosado v. Wyman,
397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442
(1970); Dandridge v. Williams, 397 U.S. 471, 90
S.Ct. 1153, 25 L.Ed.2d 491 (1970).

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by Pat Bailey
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
W. E. Allen, Co-Chairman

James H. Broadhurst
Bob Flowers
Dyer Moore, Jr.
J. C. Davis

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant